## Franmar Co. v. Lower Gwynedd Township Zoning Board of Adjustment

*Jesse W. Beeghley, Jr.*, for plaintiff.

*J. Bradley Taylor*, for intervenor.

*John P. Knox*, for defendant.

SMILLIE, J., January 31, 1968.—This is an appeal by the owner of land which surrounds on three sides the land of John W. Kellogg, to whom the Zoning Board of Adjustment of Lower Gwynedd Township granted a special permit to operate a dog training school as an accessory use under section 300(e) of the zoning ordinance.

John W. Kellogg, intervenor, is the equitable owner of the subject lot under an agreement of sale with William S. Benica and Juen C. Benica, his wife, dated May 16, 1967, expressly conditioned upon Kellogg's obtaining approval from the Zoning Board of Adjust-

ment of Lower Gwynedd Township "to operate a dog training business". In the event that such approval was not forthcoming all deposits were to be refunded and neither party further bound.

The proposed activities were to take place on a three-acre lot with 215 feet of frontage on the westerly side of Sumneytown Pike opposite the Gwynedd Mercy School and College, an area zoned "A" residential district. The tract has a depth of approximately 600 feet, with a dwelling house 9 feet removed from the road. Located behind the house are a small shed and a barn where the dog training will take place. The tract is surrounded on three sides, except the Sumneytown Pike side, by land owned by Franmar Co., Inc., appellant herein, which has subdivided its tract to build homes costing in the neighborhood of $50,000. Two of the lots abut and two more are within 50 feet of the Kellogg property. The closest house to the proposed activities will be about 150 feet.

John W. Kellogg applied to the zoning officer for a use permit to conduct a *dog training* studio in the barn on the property which was refused. He then appealed to the zoning board of adjustment which granted him a permit for the proposed use and a variance to erect a large sign on the property. Franmar Co. appealed.

Kellogg has been engaged in training dogs since 1943. He is presently conducting classes at the barn behind the Fort Side Inn in Whitemarsh, at the Abington and Germantown YMCA and at the Mid-City YWCA. At these locations he has a staff of two assistants. The board of adjustment approved of his having his assistants with him at the Lower Gwynedd site since the testimony indicated "that only one teacher, either the applicant or one of his assistants, is present at any one time teaching a class".

Applicant proposes to conduct two classes a night in the barn lasting from 7 p. m. to 10 p. m., Monday to Thursday. Each class would have 10 to 12 dog owners and their dogs. The dogs would come in on a leash, line up as a group and be taught to obey certain commands. Each class is conducted once a week for 10 weeks at a cost of $35. Mr. Kellogg is now handling 100 people and their dogs a week and expects to have about 500 people a year. He expects about 20 per night, 10 for both the 7 p. m. and 9 p. m. sessions. For his dog studio he plans a few alterations to the interior of the barn but no exterior changes. There will be a parking area approximately 72 feet wide in front of the barn and one of the same size on the southern side of the barn. The parking area will accommodate 14 to 15 cars.

Mr. Kellogg claimed at the hearing that he was not a *dog trainer* but a *teacher*. When asked if he was a dog trainer, he replied: "No, I am a teacher of dog training". He repeatedly stated he was a teacher and not a trainer to bring himself within the applicable ordinance, article III, sec. 300 of the Lower Gwynedd Township Zoning Ordinance which provides:

"Sec. 300. A building may be erected, altered or used and a lot or premises may be used, for any of the following purposes and for no other: a. Single family detached dwelling (b, c, d of the ordinance are of no concern here) e. Accessory use on the same lot with and customarily incidental to any of the above permitted uses. Accessory use shall be understood to include the professional office or studio of a doctor, dentist, veterinarian, masseur, *teacher*, artist, architect, engineer, draftsman, musician, lawyer, magistrate, also rooms used for home occupations, including dressmaking, millinery, laundry or similar handicrafts; provided the office, studio or occupational room is located in a dwelling in which the practitioner

resides or in a building accessory thereto". (Italics supplied.)

The sole question before the court is whether the proposed use of the barn for dog training is the kind of activity encompassed by a zoning ordinance which permits as an accessory use the "professional office or studio . . . of a *teacher*".

The zoning board found that Mr. Kellogg "has acquired a professional status and has pursued a specialty in the teaching of dog owners so that he properly is a 'teacher' within the meaning of that word in the Lower Gwynedd Zoning Ordinance". The Zoning Board cited the case of Kollar Appeal, 28 D. & C. 2d 745 (1962), in support of its decision.

In the Kollar case, supra, the court stated that a dance studio was a permissible accessory use under a zoning ordinance. The court stated at page 748:

"The term professional office or studio of a 'teacher' or 'practitioner of a similar character' embraces a dance instructor. The dance has always been considered an art requiring unusual grace and skill".

The court quoted Plato as saying the art of the dance was the highest form of physical culture and concluded that, as such, it was a profession and not a business. And, as a teacher of a profession, she was within the ordinance allowing certain accessory uses in a residential neighborhood.

We feel that the Kollar case represents the outside limit of the definition of teacher and does not apply to the facts which are controlling here.

In Bonasi v. Haverford Township Board of Adjustment, 382 Pa. 307 (1955), the Supreme Court of Pennsylvania held that the operation of a beauty shop was not a "professional office" within the meaning of the zoning ordinance. Confronted with the same issue of the definition of a profession, the court stated at page 310:

"The learned court below, after considerable research and consideration, discussed the pivotal question of whether or not the vocation of a hairdresser and beautician constitutes the practice of a profession. The Ordinance, it is true, does not define the terms 'profession' or 'professional office'. But in judicially construing the enactment in question we are not concerned with abstract or theoretical definitions. We are required to 'construe' the meaning of the words employed *as intended, used in, and evidenced by the Ordinance.* It is a principle of statutory construction that in construing a legislative enactment the court must ascertain and give effect to the *legislative intention* as expressed in the language employed: Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §533, 551, 552." (Italics supplied.)

The court in that case looked to other provisions of the zoning law to see how the ordinance categorizes various activities. The instant ordinance gives no clue as to whether the dog training school is to be considered a commercial or professional use. We have only the common usage and previous judicial definitions to guide us.

In the Kollar case, supra, Judge Groshens limited the nature of the permissible accessory use, warning that *instructions* in meat cutting or welding were not to be permitted. We feel that the proposed dog training activities are more allied to the meat cutting or welding "business" than to the profession of teaching. The drafters of the ordinance in question intended to restrict and limit moneymaking operations in residential districts to certain distinctive classes. A random sampling of college catalogues reveals that dancing is taught but one has to search long and hard to find a course in dog training in any college. The dance is an art form; the teaching of it may be a professional activity. Not every form of "telling" and

"showing" someone how to do a job can raise the instructor to the profession of a "teacher". Not every activity can be raised to the status of a profession. Dog training, by whatever name Mr. Kellogg wants to call it, has never been considered an art form or a professional occupation.

When a mother "teaches" a child to eat, to toilet necessities, to walk, she is a teacher in that she instructs and demonstrates what should be done but she is not a "teacher" in the sense that the *profession of teaching* is generally regarded.

A judge teaches a jury how they should approach the decision in a case but he is not a teacher. A flea trainer may require expert knowledge and skill but he would not qualify as a teacher under an ordinance restricting the use of residential homes to a recognizable class. "Teacher" as a designation of a profession, envisions study with an accredited institution which graduates the student into a qualified class or definable occupation. Teaching has been, and, is more so today, regarded as a specially prepared vocation developing talents and capabilities to educate others in some formal pursuit. Such formal pursuit need not be literary, artistic, or professional but it is more than "drilling" or repeating formulas for performing specific acts. It is perhaps drawing a fine distinction but the word "teacher" connotes more than a ski instructor, a masseur demonstrator, a sales manager, or a dog trainer who may all explain the intricacies of the "job" at hand but do not develop the mind or the pupil.

The occupation of teacher is something acquired through study and approval of recognized authority. Perhaps it is not necessary to go to a normal school or even to graduate from a college with a degree, but "teacher" when used to limit its application to a class has definable boundaries. We conceive of a teacher

as one who has been taught to educate and develop the intellectual side of other humans. Socrates taught and was condemned to death for his teachings. We do not believe that any dog tráiners, no matter how wild their instructions, would be able to stir the mind of listeners to take primitive measures to still his voice; not even the dogs. Dog training or training dog owners is a business as distinguished from a profession.

Here, the fact that the dogs accompany their masters into the room where the training takes place indicates obviously that the dog is being trained while the master is being shown and explained the proper methods. The dogs' presence is essential to the program of Mr. Kellogg. It is the dogs' *training* which is important, which is supplemented by the talk to the dog owner. Undoubtedly the dog is told to "sit" and the owner is told how to talk to the dog so that he will obey, but if the dog constantly walks out in disgust "teaching" ceases.

Moreover, the ordinance ties the word teacher to a "professional office or studio". A barn for dogs with their owners is not such a structure.

The zoning board of adjustment must be dog lovers because, unlike so many zoning requests, it overreached itself to give the applicant even more than he wanted, or at least more than his counsel said he wanted. For example, it gave him the right to have two instructors and a large sign, but at the argument, counsel said he did not wish either.

When the intervenor applied to the zoning board for a use permit for his obedience school, he also requested a variance for a sign larger than the 125 square inches permitted by section 1500 of the zoning ordinance. His sign was to be two feet by three feet and read "Dog Training" and below that the catch phrase:

"KELLOGG'S
KOLLEGE
KANINE
KNOWLEDGE
Telephone number ——————".

The sign contemplated by the applicant and approved by the board of adjustment emphasizes the business nature of the venture and the undeniable fact that it is a *dog* training establishment.

The zoning board of adjustment granted a variance for the sign, but appellee now concedes that there was no justification for the board's decision with regard to the sign and agrees there is no need for a sign. Nevertheless, the size and wording of the sign certainly shed light on what Mr. Kellogg thought of his venture. Professional men do not need six feet square signs with catchy alliterative phrases to identify their offices. Nor do they usually place their telephone numbers on the signs. We must agree with appellant that the proposed sign is more in the nature of commercial advertising than identification of professional offices and the granting of a variance for such sign was an abuse of discretion. The sign and the reference to the "dog training business" in the agreement of sale with the Benicas show that Kellogg himself considered the activity commercial and not professional. It was only later at the hearing that Mr. Kellogg tried to cast himself as a professional man, a teacher of dog training as opposed to a dog trainer in order to try to come within the scope of the special exception.

It is our opinion that a dog trainer does not possess the knowledge, competence, stature and standing in the community of a profession. The service is more similar to the nonessential functions performed by a beauty shop operator and we, therefore, feel compelled to hold that Mr. Kellogg's proposed use will

not qualify as a professional office or studio, and the Board of Adjustment of Lower Gwynedd Township is reversed.

### ORDER

And now, January 31, 1968, after argument before the court en banc consisting of Robert W. Honeyman, J., J. William Ditter, Jr., J., and Frederick B. Smillie, J., the decision of the Zoning Board of Adjustment of Lower Gwynedd Township is reversed.